UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

TERRANCE DION STEWART,

          Petitioner,

                               CASE NO. 09-10985

v.

                               PAUL D. BORMAN
MARY BERGHUIS,                UNITED STATES DISTRICT JUDGE

          Respondent.
_____/

**OPINION AND ORDER
DENYING THE HABEAS CORPUS PETITION BUT
GRANTING IN PART A CERTIFICATE OF APPEALABILITY**

Petitioner Terrance Dion Stewart has filed a petition for the writ of habeas corpus pursuant to 28 U.S.C. § 2254. The habeas petition challenges Petitioner's Wayne County convictions for armed robbery, fleeing and eluding a police officer, and three firearm offenses. Petitioner argues that the evidence was insufficient to support the jury's verdict and that the trial court erred in refusing to give a missing-witness jury instruction after the prosecution failed to exercise due diligence in producing a witness. The Court has concluded from a review of the record that the state court's adjudication of Petitioner's claims was objectively reasonable. Accordingly, the habeas petition will be denied.

### I. Background

### A. The Facts

The charges against Petitioner arose from a robbery at the Quality Inn on Michigan

Avenue in Dearborn, Michigan. The complainant was a New Mexico truck driver named Kamel Al-Salemani. The state court summarized the facts as follows:

> Complainant spoke with two women at a truck stop. He indicated that he would be returning to the hotel, and they asked to ride with him because they also had rooms at the hotel. On the way back to the hotel, one of the women requested they take a detour so they could buy cigarettes. During this detour she spoke on her cell phone. Back at the hotel, as complainant began to open the door to his room, two men approached him and pointed guns at his head. The men took approximately $94 and complainant's cell phone; one man hit complainant with a gun. As complainant went to the hotel office to report the robbery, he passed a car in the parking lot. The car was running and its lights were on. Someone was in the driver's seat, and the front passenger door was open. After complainant got to the office, he looked back and saw the men who had robbed him enter the car. Complainant pointed out the car to an off-duty Dearborn police officer who [was] working as a security guard at the hotel. The officer followed the car and called for uniformed assistance. After a chase, defendant and the others were arrested. Defendant was in the driver's seat. Three loaded handguns and complainant's cell phone were found in the backseat of the car.

*People v. Stewart*, No. 274618, 2008 WL 108959, at *1 (Mich. Ct. App. Jan. 10, 2008) (unpublished).

The complainant identified the two robbers at Petitioner's trial through the use of photographs. He testified that he thought the two women (Crystal Barnett and Jennifer Landis) also were involved in the robbery, because one of the robbers said to him, "Give me the money that you told the girls about."

Ms. Barnett testified for the defense that she saw the two men rob the complainant and that the passenger door to a parked car in the area was closed when she ran by it after the robbery. She was able to see a large man in the driver's seat of the car, but she did not

2

see his face.

Petitioner's friend, Maurita Harper, testified that she had plans to meet Petitioner at the Quality Inn on the night in question, but that she did not go there because she fell asleep after dinner. Petitioner testified that he was a paraplegic and that he waited twenty to thirty minutes for Ms. Harper to arrive at the Quality Inn. While he was waiting for her, two men that he knew from his Detroit neighborhood walked up to him and asked for a ride. The men got in his car and almost immediately afterward, a truck began to follow him as he drove down city streets. The men in his car pulled guns out of their waistbands and told him to "just drive." At that point, he knew something was not right. He had no idea that the man following him was an off-duty police officer. When he ended up in a field, he finally recognized that the police were behind him. As the police approached, the men in his car tried to throw their guns in the back seat.

Petitioner denied having a gun that night, and he denied seeing guns when the two men asked for a ride. He also claimed that it was not his intent to be the getaway driver.

### B. The Verdict, Sentence, and Direct Appeal

The trial court did not instruct the jury on any lesser-included offenses, and on September 29, 2004, the jury found Petitioner guilty, as charged, of armed robbery, Mich. Comp. Laws § 750.529, carrying a concealed weapon, Mich. Comp. Laws § 750.227, third-degree fleeing and eluding, Mich. Comp. Laws § 257.602a(3); felon in possession of a firearm, Mich. Comp. Laws § 750.224f, and possession of a firearm during the

commission of a felony (felony-firearm), second offense, Mich. Comp. Laws § 750.227b. Petitioner's bond was continued following the jury's verdict, but he did not appear for sentencing. He was arrested eventually and sentenced on September 19, 2006. Petitioner received a sentence of seven to fifteen years in prison for the armed robbery, concurrent terms of two to five years for carrying a concealed weapon, being a felon in possession of a firearm, and fleeing and eluding the police, and a consecutive term of five years for felony firearm.

Petitioner raised his habeas claims in an appeal of right. The Michigan Court of Appeals affirmed his convictions in an unpublished decision, *see People v. Stewart*, 2008 WL 108959, and on April 28, 2008, the Michigan Supreme Court denied leave to appeal because it was not persuaded to review the issues. *See People v. Stewart*, 480 Mich. 1191 (2008) (table).

### C. The Habeas Petition and Responsive Pleading

Petitioner filed his habeas corpus petition through counsel on March 17, 2009, and an amended petition on April 21, 2009. His arguments are:

   I.   Petitioner's Fourteenth Amendment right to due process was violated when the prosecutor failed to present sufficient evidence to prove beyond a reasonable doubt that Petitioner committed or aided and abetted the armed robbery.

   II.  The evidence was insufficient as a matter of law to convict Petitioner of felon in possession of a firearm and felony firearm.

   III. Petitioner's Sixth Amendment right to a fair trial and right to

confrontation and his Fourteenth Amendment due process right to present a defense were violated when the trial judge refused to give a missing witness instruction after the prosecution failed to exercise due diligence in producing witness Jennifer Landis.

Respondent argues in an answer to the petition that the evidence supports the state court's conclusion on Petitioner's first two claims and that Petitioner's third claim is completely meritless and not cognizable on habeas review. Petitioner replies that the state court's decision was not an adjudication on the merits of his claims. Petitioner also maintains that the state court's decision was clearly erroneous, an unreasonable application of clearly established law, or an unreasonable determination of the facts.

## II. Standard of Review

### A. Whether the State Court's Decision was an Adjudication on the Merits

"The statutory authority of federal courts to issue habeas corpus relief for persons in state custody is provided by 28 U.S.C. § 2254, as amended by the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA)." *Harrington v. Richter*, __ U.S. __, __, 131 S. Ct. 770, 783 (2011). Pursuant to § 2254, state prisoners are not entitled to the writ of habeas corpus unless the state court's adjudication of their claims on the merits

>  (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
>  (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceedings.

28 U.S.C. § 2254(d).

Petitioner alleges that § 2254(d) does not apply here and that this Court's review is *de novo* because the state court did not adjudicate his claims on the merits. Petitioner asserts that the state court did not apply *Jackson v. Virginia*, 443 U.S. 307 (1979), to his sufficiency-of-the-evidence claims and did not apply *Crawford v. Washington*, 541 U.S. 36 (2004), to his third claim regarding the missing witness.

The Supreme Court stated in *Richter* that, "[w]hen a federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary." *Richter*, 131 S. Ct. at 784-85. Petitioner presented his claims to the Michigan Court of Appeals and to the Michigan Supreme Court. Neither court stated that Petitioner's claims were barred from review by a procedural error.

Furthermore, the Michigan Court of Appeals issued a reasoned opinion in which it listed and applied the elements of armed robbery and felony firearm to Petitioner's case. The Court of Appeals also discussed Petitioner's claim about the missing witness. Although the Court of Appeals did not cite *Jackson* or *Crawford* in its decision, "a state court need not cite or even be aware of [Supreme Court] cases under § 2254(d)." *Id.* at 784 (citing *Early v. Packer*, 537 U.S. 3, 8 (2002) (*per curiam*)). The Court therefore presumes that the state appellate court's opinion was an adjudication on the merits and

that the deference due under § 2254(d) applies here.

## B. The Supreme Court's Interpretation of § 2254(d)

A state court's decision is "contrary to" clearly established federal law if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000). An "unreasonable application" occurs when "a state-court decision unreasonably applies the law of [the Supreme Court] to the facts of a prisoner's case." *Id.* at 409.

"[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Id.* at 411. "[W]here factual findings are challenged, the habeas petitioner has the burden of rebutting, by clear and convincing evidence, the presumption that the state court's factual findings are correct." *Goodwin v. Johnson*, 632 F.3d 301, 308 (6th Cir. 2011) (citing 28 U.S.C. § 2254(e)(1) and *Landrum v. Mitchell*, 625 F.3d 905, 914 (6th Cir. 2010)).

"A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Richter*, 131 S. Ct. at 786. To obtain a writ of habeas corpus from a federal court, a petitioner must show that the state court's ruling on a claim "was so lacking in

justification" that it resulted in "an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id.* at 786-87.

### III. Discussion

#### A. Sufficiency of the Evidence

Petitioner's first two claims allege that the prosecutor failed to present sufficient evidence to support his convictions for armed robbery, felon in possession of a firearm, and felony firearm. "[A]fter AEDPA, federal courts reviewing state habeas claims accord a double layer of deference" to sufficiency-of-the-evidence claims. *White v. Steele*, 602 F.3d 707, 710 (6th Cir. 2009), *cert. denied*, __ U.S. __, 131 S. Ct. 130 (2010). First, the Court "must determine whether, viewing the trial testimony and exhibits in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Brown v. Konteh*, 567 F.3d 191, 205 (6th Cir. 2009) (citing *Jackson*, 443 U.S. at 319) (emphasis omitted), *cert. denied*, __ U.S.__, 130 S. Ct. 1081 (2010). Second, even if the Court were "to conclude that a rational trier of fact could not have found a petitioner guilty beyond a reasonable doubt," the Court "must still defer to the state appellate court's sufficiency determination as long as it is not unreasonable." *Id.* (citing 28 U.S.C. § 2254(d)(2)) (emphasis omitted).

The *Jackson* standard "must be applied with explicit reference to the substantive elements of the criminal offense as defined by state law." *Jackson*, 443 U.S. at 324 n.16. "'Circumstantial evidence alone is sufficient to sustain a conviction and such evidence

need not remove every reasonable hypothesis except that of guilt.'" *United States v. Kelley*, 461 F.3d 817, 825 (6th Cir. 2006) (quoting *United States v. Spearman*, 186 F.3d 743, 746 (6th Cir. 1999)). A reviewing court does

> not reweigh the evidence, re-evaluate the credibility of witnesses, or substitute [its] judgment for that of the jury. Thus, even though [the Court] might have not voted to convict a defendant had [it] participated in jury deliberations, [it] must uphold the jury verdict if any rational trier of fact could have found the defendant guilty after resolving all disputes in favor of the prosecution.

*Brown v. Konteh*, 567 F.3d at 205 (internal citation omitted).

### 1. Armed Robbery

Petitioner alleges that the prosecutor failed to prove beyond a reasonable doubt that he committed an armed robbery. According to Petitioner, there was no evidence that he agreed to rob the complainant, that he knew the two men intended to rob the complainant, or that he drove the two men to the Quality Inn. Petitioner also claims there was no evidence that he participated in the robbery, that he saw anyone associated with the robbery before it occurred, that he possessed the stolen items, or that he knew the men who entered his vehicle had weapons.

#### a. Elements of the Offense

At the time of Petitioner's offense, the elements of armed robbery were an assault and a felonious taking of property from the victim's presence or person while armed with a dangerous weapon. Mich. Comp. Laws § 750.529; *People v. Ford*, 262 Mich. App. 443, 458 (2004). It was undisputed that the two robbers assaulted the complainant and

took money and a cell phone from him at gunpoint. Although there was no evidence that Petitioner personally approached the complainant and robbed him, the prosecutor proceeded on an aiding and abetting theory. This required showing that

> "(1) the crime charged was committed by the defendant or some other person; (2) the defendant performed acts or gave encouragement that assisted the commission of the crime; and (3) the defendant intended the commission of the crime or had knowledge that the principal intended its commission at the time that [the defendant] gave aid and encouragement."

*People v. Robinson*, 475 Mich. 1, 6 (2006) (quoting *People v. Moore*, 470 Mich. 56, 67-68 (2004)).

### b. The State Court's Decision

The Michigan Court of Appeals determined that

> the evidence presented at trial supported [a] finding that defendant both knew of and supported the others' decision to rob complainant. Complainant's testimony indicates that the robbery was premeditated, with the complicity, perhaps unknowing, of the women who asked him for a ride, and who told the robbers about the money he carried and where he was staying. Defendant drove the getaway car, which complainant testified that he saw with its engine running and its door open immediately after the robbery. Testimony that defendant attempted to evade pursuit both by the off-duty police officer and the uniformed officer provided circumstantial evidence that defendant intended that the robbery succeed and acted in conformity with that intent.

*Stewart*, 2008 WL 108959, at *3. The Court of Appeals concluded that the prosecution presented sufficient evidence to support Petitioner's conviction for armed robbery.

The state court's summary of the facts is supported by the record. The complainant testified that one of the two robbers told him to hand over the money which

he had mentioned to the young women. (Tr. Sept. 27, 2004, at 204; Tr. Sept. 28, 2004, at 25.) This is an indication that the robbery was planned.

Petitioner was linked to the crime through the car that transported the robbers away from the hotel. The complainant saw the car with its passenger door open at the hotel, and he saw the two men who had robbed him get in the car. He then informed the manager of the hotel that those were the men who had robbed him. Neither he, nor Crystal Barnett, who also saw the parked car, could identify the man in the driver's seat of the car. However, the off-duty police officer immediately followed the car, and a uniformed police officer shortly afterward took over the chase. The uniformed officer rammed the fleeing car, forcing it to stop, and found Petitioner in the driver's seat of the car. The jury could have inferred from this evidence that Petitioner aided and abetted the two robbers by providing them with a means of escape.

### c. *Brown v. Palmer*

Petitioner relies on *Brown v. Palmer*, 441 F.3d 347 (6th Cir. 2006), and two pre-AEDPA decisions cited in *Brown*[1] where the Sixth Circuit granted the writ of habeas corpus for insufficient evidence. In *Brown v. Palmer,* there was no evidence that Brown assisted or encouraged the gunman or that he intended the gunman to commit the offenses. Brown was merely present at the scene of the crime, and he had only a brief

---

[1] *See Hopson v. Foltz*, 818 F.2d 866 (6th Cir. 1987) (unpublished); *Fuller v. Anderson*, 662 F.2d 420 (6th Cir. 1981).

interaction with the gunman. The Sixth Circuit concluded that the facts were insufficient to establish beyond a reasonable doubt that Brown aided and abetted the gunman.

Petitioner's case is distinguishable. Although he testified that he went to the Quality Inn to meet a friend and that he gave the two men a ride because he recognized them, there was evidence that his car engine was running and that the passenger door was open after the robbery. He subsequently helped the robbers escape from the crime scene. Although he testified that he did not realize what the robbers had done until later, he attempted to evade the uniformed police officer, and an inference of guilt arises when one flees from a law enforcement officer. *Brown v. Palmer*, 441 F.3d at 352 (citing *United States v. Dillon*, 870 F.2d 1125, 1126 (6th Cir. 1989)).

Petitioner testified that he kept driving, despite being chased, because he was under duress from the two armed men in his car. However, three guns were found in the car, and even though Petitioner denied possessing any of the guns, the jury was free to discredit his version of the facts. Furthermore, the prosecutor was not required to disprove Petitioner's claim that he was merely giving the robbers a ride, unaware until later that they had robbed the complainant. *Kelley*, 461 F.3d at 825. And the Court may not reweigh the evidence, assess the credibility of the witnesses, or substitute its judgment for the jury's verdict. *Brown v. Konteh*, 567 F.3d at 205.

### d. Conclusion

The record indicates that Petitioner was more than merely present or innocently

parked at the Quality Inn, and his intent may be inferred from the circumstances. *People v. Wolford*, 189 Mich. App. 478, 480 (1991). Therefore, a rational trier of fact could have concluded from the evidence, taken in the light most favorable to the prosecution, that Petitioner aided and abetted an armed robbery. The state court's decision was not based on an unreasonable determination of the facts. Nor was it contrary to, or an unreasonable application of, *Jackson*.

Finally, even if a rational trier of fact would not have found Petitioner guilty beyond a reasonable doubt, the state appellate court's sufficiency determination was reasonable. Therefore, Petitioner has no right to relief on the basis of his challenge to his armed robbery conviction.

### 2. Felon in Possession and Felony Firearm

Petitioner's other challenge to the sufficiency of the evidence concerns his convictions for felon in possession of a firearm and felony firearm. Petitioner alleges that there was no evidence he possessed or carried a firearm or that he aided and abetted the two men who were carrying firearms. The Michigan Court of Appeals stated on review of this claim that the question of possession was a factual issue for the jury to resolve and that the prosecutor presented sufficient evidence to sustain Petitioner's felony firearm conviction.

"Under [Mich. Comp. Laws §] 750.224f, a person who has been convicted of a felony may not 'possess, use, transport, sell, purchase, carry, ship, receive, or distribute a

firearm' unless certain conditions are met." *People v. Dupree*, 284 Mich. App. 89, 102 (2009), *affirmed*, 486 Mich. 693 (2010). Therefore, in order to be found guilty of felon in possession of a firearm, a defendant must have had a previous felony conviction and be in possession of a firearm.

The other firearm offense in question is felony firearm. The elements of this offense "are that the defendant possessed a firearm during the commission of, or the attempt to commit, a felony." *People v. Avant*, 235 Mich. App. 499, 505 (1999).

Defense counsel stipulated that Petitioner had committed a prior felony. (Tr. Sept. 29, 2004, at 164.) Therefore, the only question is whether Petitioner possessed a firearm during the commission of, or attempt to commit, a felony.

No one disputed that an armed robbery occurred, and there was considerable evidence that Petitioner aided and abetted the two men who robbed the complainant. Although Petitioner denied possessing a gun during the incident, three loaded guns were found in the back seat of the car that he was driving immediately after the robbery. The jury could have inferred from this evidence that each of the three men in the car (the two robbers and Petitioner) possessed a gun. This was at least as believable, or more believable, than Petitioner's testimony that one man had two guns.

The fact that the gun was not found directly on Petitioner did not preclude a conviction for illegal possession of a firearm, because possession can be constructive, that is, reasonably accessible to the defendant, *People v. Burgenmeyer*, 461 Mich. 431, 438

(2000), and joint (shared), *People v. Hill*, 433 Mich. 464, 470 (1989). Petitioner did not deny that there were three large handguns in his car. And because he claimed to be 6'4" tall and able to drive despite his disability, it was not unreasonable for the state court to conclude that the guns were readily accessible to Petitioner in the rear passenger compartment of the car.

A rational trier of fact could have concluded from the evidence taken in the light most favorable to the prosecution that Petitioner was unlawfully armed and that he assisted the two robbers in committing a felony. Therefore, the state court's decision on Petitioner's firearm offenses was not contrary to, or an unreasonable application of, *Jackson*.

### B. The Prosecutor's Failure to Produce Jennifer Landis and the Trial Court's Failure to Read the Jury Instruction on Missing Witnesses

Petitioner's third and final claim alleges that the prosecutor failed to use due diligence to produce Jennifer Landis, who was one of the two women at the Quality Hotel during the robbery. Petitioner also alleges that the trial court erroneously concluded that Landis was not a *res gestae* witness, that the prosecutor exercised due diligence in producing Landis, and that the court was not required to read the missing-witness jury instruction.[2] Petitioner maintains that the prosecution's minimal attempt to locate Landis

---

[2] The missing-witness jury instruction reads:

[State name of witness] is a missing witness whose appearance was the responsibility of the prosecution. You may infer that this witness's

by making a telephone call to Landis' mother and her probation officer did not amount to due diligence under state law.

The Michigan Court of Appeals determined on review of this claim that the trial court did not abuse its discretion when it concluded that the prosecution exercised due diligence in its search for Landis. This Court finds no merit in Petitioner's claim because it alleges a violation of state law, and "[a] federal court may not issue the writ [of habeas corpus] on the basis of a perceived error of state law." *Pulley v. Harris*, 465 U.S. 37, 41 (1984); *accord Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991); *Lewis v. Jeffers*, 497 U.S. 764, 780 (1990). Furthermore, there was a valid basis for the trial court's conclusion that the prosecution exercised due diligence in producing Landis:

> The officer in charge of this case testified that she did not serve Landis with a subpoena because she was not able to locate [Landis]. Landis used her mother's address as her place of residence, but Landis' mother told the officer that she stated that she had not seen Landis in months and did not know how to contact her. The officer contacted Landis' probation officer, who informed her that Landis was missing and could not be located. The officer checked the LEIN system before trial and found that Landis had not yet been located, and that a warrant had been issued for her arrest.

*Stewart*, 2008 WL 108959, at *2; *see also* Tr. Sept. 29, 2004, at 3-13 (the due-diligence hearing and the trial court's ruling).

---

testimony would have been unfavorable to the prosecution's case.
CJI2d 5.12.

### 1. The Confrontation Clause

Petitioner attempts to couch his claim in federal constitutional terms by asserting that the trial court's ruling violated his constitutional rights to due process and a fair trial and his right to confront the witnesses against him. The Sixth Amendment to the United States Constitution guarantees defendants in criminal cases the right "to be confronted with the witnesses against him." U. S. Const. amend. VI.

Petitioner's claim lacks merit because "[t]he Sixth Amendment right of confrontation does not impose upon the Government the duty to call a particular witness." *United States v. Bryant*, 461 F.2d 912, 916 (6th Cir. 1972) (citing *United States v. Polisi*, 416 F.2d 573, 579 (2d Cir. 1969))." Furthermore, the Confrontation Clause "protects a defendant's right to confront the witnesses against him, by barring, for example, admission of testimonial statements made without opportunity for cross-examination." *United States v. Jones*, 364 F. App'x 205, 210 (6th Cir. 2010) (citing *Crawford*, 541 U.S. at 53–54). Because there was no evidence that Landis made any testimonial statements about Petitioner, Petitioner's Confrontation Clause argument is meritless. *Id.*

### 2. The Right to Present a Defense

Petitioner also asserts his constitutional right to present a defense. The Constitution "guarantees criminal defendants 'a meaningful opportunity to present a complete defense,'" *Crane v. Kentucky*, 476 U.S. 683, 690 (1986) (quoting *California v. Trombetta*, 467 U.S. 479, 485 (1984)), but

17

> well-established rules of evidence permit trial judges to exclude evidence if its probative value is outweighed by certain other factors such as unfair prejudice, confusion of the issues, or potential to mislead the jury . . . . [T]he Constitution permits judges to exclude evidence that is repetitive . . . , only marginally relevant or poses an undue risk of harassment, prejudice, [or] confusion of the issues.

*Holmes v. South Carolina*, 547 U.S. 319, 326-27 (2006) (quotation marks and citations omitted) (end bracket in original).

Petitioner alleges that Landis might have been able to testify that the passenger door to Petitioner's car was closed and that the car engine was not running. Whether Landis would have testified in this manner is mere speculation. Even if she had testified as Petitioner speculates she may have, the testimony would have pertained to relatively minor factual issues, which Petitioner or Crystal Barnett had already addressed during their testimony. Therefore, the prosecutor's failure to produce Landis, and the trial court's failure to read the missing-witness instruction, likely did not have a "substantial and injurious effect or influence in determining the jury's verdict." *Brecht v. Abrahamson*, 507 U.S. 619, 623 (1993) (quoting *Kotteakos v. United States*, 328 U.S. 750, 776 (1946)). The alleged constitutional error was harmless.

## IV. Conclusion

The state court's decision was not contrary to federal law, an unreasonable application of federal law, or an unreasonable determination of the facts. Accordingly, the petition and amended petition for writ of habeas corpus [dkt. #1 and #4] are **DENIED**.

The Court nevertheless **GRANTS** a certificate of appealability on Petitioner's first and second claims regarding the sufficiency of the evidence because reasonable jurists could debate the Court's assessment of those claims or conclude that the claims deserve encouragement to proceed further. *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). The Court declines to grant a certificate of appealability on Petitioner's third claim regarding Jennifer Landis because reasonable jurists would not find the Court's assessment of that claim debatable or wrong, nor conclude that the issue deserves encouragement to proceed further. *Id.*

PAUL D. BORMAN
UNITED STATES DISTRICT JUDGE

Dated: 8-29-11